IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


ROGER D. HARRIS, JR.                                                      PLAINTIFF


v.                                    Civil No. 4:25-cv-04012-SOH-SGS


SERGEANT ROYCE BENNETT                                              DEFENDANTS


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action originally filed *pro* se by Plaintiff, Roger D. Harris, under 42 U.S.C. § 1983.  Currently before the Court is Defendant's Motion for Summary Judgment.  (ECF No. 27).  Plaintiff responded.  (ECF No. 35).  Defendant replied.  (ECF No. 36).  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011) the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.  The Court finds the matter ripe for consideration and **RECOMMENDS** Defendant's Motion for Summary Judgment be **GRANTED** and Plaintiff's claims be **DISMISSED WITH PREJUDICE** for the reasons explained below.

**I.  PROCEDURAL BACKGROUND**

Plaintiff filed his original Complaint on February 14, 2025, along with a Motion to Proceed *in forma pauperis* ("IFP").  (ECF Nos. 1-2).  The Court granted Plaintiff IFP status on the same day.  (ECF No. 3).  On February 25, 2026. the Court entered an Order severing Plaintiff's claims from his original Complaint and ordering an Amended Complaint with only Plaintiff's claims against the instant Defendant, Sergeant Royce Bennett.  (ECF No. 6).  Plaintiff filed said Amended Complaint on March 19, 2025.  (ECF No. 8).

1

In his Amended Complaint, Plaintiff alleges Defendant Bennett, a correctional officer at the Lafayette County Detention Center ("LCDC"), violated his constitutional rights on November 6, 2024 by: (1) failing to protect his sexual rights; and (2) retaliating against him. (ECF No. 8, p. 4). Specifically, Plaintiff alleges:

> [Defendant] was and is going around the jail telling inmates he caught myself and another inmate on video doing sexual act! Which is not true! [Defendant Bennett] said since I have a lawsuit against him last year 2024. He's going to [scandalize] my name and my sex life to anyone who know me or not. I feel real disrespected by [Defendant]! He still comes to me making comments about my sexual life. Said Harris you don't have enough soap on your body when I was in the shower and he was looking at me laughing. Now the rumor is all in this jail and in the streets, saying I am gay! I feel violated.

(ECF No. 8, pp. 4-5) (errors in original). Plaintiff also alleges an official capacity claim against Lafayette County stating: "All defendants acted under color of law and violated my sexual rights to be free. And retaliation to protect deliberate indifference to a serious failure to protect my sexual rights!" *Id.* at 5. For relief, Plaintiff seeks compensatory and punitive damages. *Id.* at 9.

Defendant filed his Motion for Summary Judgment on December 12, 2025, along with a Brief in Support and Statement of Undisputed Facts. (ECF Nos. 27-29). In his Motion, Defendant argues: (1) Plaintiff's claim of retaliation fails as a matter of law; (2) Defendant is entitled to qualified immunity; and (3) there is no basis for Plaintiff's official capacity claim because there is no unconstitutional policy in Lafayette County regarding Plaintiff's allegations. (ECF No. 27).

On December 15, 2026, the Court ordered Plaintiff to respond to Defendant's Motion for Summary Judgment. (ECF No. 30). In this Order, Plaintiff was specifically advised he could not rely on allegations in his complaint but instead must submit evidence "such as records, affidavits, discovery response, or other documents, opposing the facts asserted by the defendants and setting out specific facts to support your claims." *Id.* Plaintiff was also specifically advised: written statements must be in the form of affidavits and an affidavit is a sworn statement based on personal

2

knowledge setting forth facts relevant to his claims and must be either: "(a) sworn and subscribed to by a notary public or (b) signed under penalty of perjury." *Id.*

Plaintiff filed his Response on February 4, 2026, in a single notarized document. (ECF No. 35). While Plaintiff did not title this document as disputed facts, he did enumerate multiple factual allegations by Defendant that he disputes. Plaintiff relied on summary judgment exhibits produced by Defendant to support his factual disputes, and all factual disputes are clearly enumerated in the Factual Background section below. Plaintiff also argues that Jail Administrator Rami Cox's responses to his grievances prove his claim of retaliation. *Id.*

Plaintiff also offered many arguments related to factual allegations and claims he did not assert in his Amended Complaint. The Court will not consider such allegations made in a response to summary judgment for the first time.[1]

Defendant filed his Reply on February 10, 2026. (ECF No. 36). Defendant argues Plaintiff cannot raise claims for the first time in his Response. Also, Defendant disputes Plaintiff's argument that Administrator Cox's responses to his grievances prove any wrongdoing by Defendant. *Id.* Finally, Defendant argues Plaintiff did not meet proof with proof but merely regurgitated his allegations from his Amended Complaint in his Response. *Id.*

---

[1] Plaintiff did not assert any cruel and unusual punishment Eighth Amendment claims (other than sexual harassment) or Equal Protection Claims in his Amended Complaint. (ECF No. 8). Further, Plaintiff did not allege any retaliation claims based on denial of dental care, tampering with his food, or through attacks of other inmates. (ECF No. 8). The Court will not consider new claims for the first time in response to Defendant's Motion for Summary Judgment. *See N. State Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004) ("Thus, while we recognize that the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment.").

Finally, on April 6, 2026, Plaintiff filed a document the Court interpreted as a Supplement to his Response. (ECF No. 41). Plaintiff again raised claims not asserted in his Amended Complaint, and argued he has met proof with proof by relying on Administrator Cox's responses to his grievances. Also, he argues Defendant has not put forth any evidence that he did not retaliate against Plaintiff or make sexual comments to him. *Id.*

## II. FACTUAL BACKROUND[2]

Plaintiff was booked into the LCDC on December 6, 2023, and released from LCDC custody on March 24, 2025. (ECF No. 29-2). Plaintiff is currently an inmate of Arkansas Division of Corrections at the Wrightsville Unit in Wrightsville, Arkansas.

It is undisputed that Plaintiff filed a previous Section 1983 Civil Rights action against Defendant on June 4, 2024. *See Harris v. Burns, et al.,* Civil Case No. 4:24-cv-04060-SOH. This case was dismissed for failure to exhaust administrative remedies on May 6, 2025. *Id.* Plaintiff then filed the instant action on February 14, 2025. *Harris v. Bennett,* Civil Case No. 4:25-cv-04012. The Court severed Plaintiff's Complaint in the instant case and opened a separate case on February 25, 2025, for his claims against LCDC Jail Administrator Rami Cox. *Harris v. Cox,* Civil Case No. 4:25-cv-04015-SOH-SGS. Plaintiff is currently prosecuting this instant case along with the separate case against Administrator Cox.

---

[2] Defendant submitted for the Court's review, on the summary judgment record, the Affidavit of the LCDC Jail Administrator, Rami Cox as records custodian; Plaintiff's Booking Sheet; Plaintiff's Grievances; Plaintiff's Deposition; and Defendant's Affidavit. (ECF Nos. 29-1 – 29-5). Jail Administrator Rami Cox testified in her Affidavit on the summary judgment record, that she is the custodian of records at the LCDC and all documents produced on this summary judgment record are true and correct copies of Plaintiff's LCDC jail file kept in the ordinary course of business at the LCDC. (ECF No. 29-1). Plaintiff did not submit any additional exhibits to the summary judgment record.

4

Plaintiff testified in his deposition that once he filed the June 4, 2024 lawsuit naming Defendant in his failure to protect claim, Defendant began telling other inmates "he was going to scandalize [Plaintiff's] name because [Plaintiff] had a lawsuit against him." (ECF No. 29-4, p. 13). Plaintiff went on to testify that Defendant "then went around to the other inmates saying I was doing sexual things with the other inmates; which it wasn't true." *Id.* Plaintiff also testified that Defendant told another inmate named Timothy that since Plaintiff filed a lawsuit on him, he was "out to retaliate." *Id.* at 15. Finally, Plaintiff testified Defendant specifically told Inmates, Sivilis, Glenn, Willis and Blocker that Plaintiff was caught on video with Inmate Brown engaging in sexual acts. *Id.* at 36-37.

In a seemingly contradictory version of events, Plaintiff also testified that another inmate, Raymond Anderson, inadvertently started the rumors that Plaintiff and Inmate Brown had a sexual relationship. (ECF No. 29-4, pp. 22-23, 29). Plaintiff most notably testified that the statements of Inmate Anderson set all his troubles into motion in April 2024. *Id.* at 29. According to Plaintiff, Defendant heard the rumor that Inmate Anderson started and then used that against Plaintiff. *Id.* at 31.

On November 6, 2024, Plaintiff filed a Grievance stating:

> I HAVE BEEN TOLD BY 4 PEOPLE JAILOR BENNETT IS GOING AROUND TELLING OR TOLD THEM I HAVE BEEN SEEN ON VIDEO BROWN GIVING ME ORRIL SEX. THAT'S WHY HE MOVED ME OVER HERE IN A POD. THAT'S NOT TRUE AND IT'S NOT RIGHT TO SACNDLIEISED MY NAME OR MY SEX LIFE TO ANYONE…!!!! I WAS MOVED OVER HERE TO A POD BECAUSE OVER IN D POD THEY KEPTH POPPING THE LOCK OT THE DOOR WHEN I GOT INTO IT WITH REMOND ANDERSON. BENNETT HE TOLD THEM IN C POD SINCE I HAVE A LAW WUITE AGAINST HIM HE GOING TO RUIN MY REPUTATION THAT'S NOT FAIR TO ME!!! BENNETT IS THE ONE GOING AROUND SAYING HOMESEXAUL WORDS TO MOST OF THE PEOPLE IN THIS JAIL! I WAS AROUND WHEN HE SAID SOMETHING SEXUAL TO T. BLOCKER AND HE WROTE HIM UP FOR IT AND JAILOR BENNETT ALSO BE TOUCHING

> ON PEOPLE AS WELL I KNOW AT LEASE 3 OF THEM BY NAME.  THANKS
> FOR YOUR TIME.

(ECF No. 29-3, p. 1) (errors and emphasis in original).  Jail Administrator Cox responded to this

Grievance on the same date stating: "I have already taken care of this situation."  *Id.*  Plaintiff filed

a Request Form on the same day as the above Grievance seemingly in reply to Administrator Cox's

response:

> WHEN DID YOU ALREADY TOOK CARE OF THIS MATTER WHEN I AM
> JUST FOUNDING OUT ABOUT WHAT JAILOR BENNETT SAID ABOUT ME
> TWO DAYS A GO.?. I COULDN'T PUT IN A GRIEVANCE BECAUSE I HAD
> ONE ALREADY PINNING . . . WHY AM I JUST NOW FOUNDING OUT
> ABOUT THIS . . . HE TALKING ABOUT MY SEXUAL LIFE WHEN HE
> DOESN'T KNOW ANYTHING ABOUT ME!?!  WHAT DID YOU DO TO
> SOLVE THIS MATTER?  WHEN HE COMES IN HE STILL BE LOOKING AT
> ME FUNNY, MAKING COMMENTS, AND LAUGHING AND SAY DO YOU
> WANT ME TO GO GET BROWN?  I HAVE SEEN HIM AT COURT?!?  I
> DON'T THINK ITS FUNNY AT ALL!!

(ECF No. 29-3, p. 2) (errors and emphasis in original).  Administrator Cox responded on

November 7, 2024 stating: "I have been getting complaints and I took care of it."  *Id.*

Plaintiff testified in his deposition that this comment by Administrator Cox indicates her

agreement that Defendant is sexual harassing Plaintiff and other inmates.  (ECF No. 29-4, pp. 38-

39.)  Plaintiff also testified in his deposition that Defendant made inappropriate sexual comments

to many inmates, not just Plaintiff.  (ECF No. 29-4, p. 39).

On December 8, 2024, Plaintiff filed another Grievance stating:

> TODAY IT WAS CHURCH CALL I MYSELF WENT TO CHURCH.  I WE WAS
> ALOWED TO COME BACK TO THE POD.  I CAME INTO A POD.  I WENT
> TO USE THE RESTROOM IN THE CELL BECAUSE THERES NO
> RESTROOM IN THE DAY AREA WHERE I AM SLEEPING.  AS I WAS
> USING THE RESTROOM STANDING UP AND FALSELY ACCURSED ME
> OF SMOKING WHEN I DIDN'T HAVE ANYTHING IN MY HAND BUT
> MYSELF HE ASKED ME WHERE IS THE COFFEE CIG AT?  I DIDN'T
> KNOW WHAT HE WAS TALKING ABOUT BECAUSE I HAD JUST CAME
> IN THE POD.  OFFICER JAILER BENNETT WALKED A FEW OF US BACK
> TO THE POD.  I WASN'T IN THE POD BUT FOR ONLY 5 MINUTES THE

6

MOST. IT WAS FOUR MORE PEOPLE IN THE CELL LIVING IN THERE. HE ONLY STAKED ME OUT OF THE OTHERS TO SAY SOMETHING ABOUT SMOKING WHEN THERE WASN'T ANY SMOKING GOING ON. IT WAS FOUR WHITES AND I WAS THE ONLY BLACK PERSON IN THERE. HE DIDN'T SAY ANYTHING TO THE FOUR IN THERE BUT ME... WHEN THEY DIDN'T FIND ANYTHING HE LEFT OUT THE CELL. I AM NOT GOING TO SAY ANY NAME. ITS AN IMATE IN HERE WITH ME TOLD ME OFFICER JAILER BENNETT SAID TO HIM I, HARRIS AND ANOTHER INMATE BLOCKER HAS A LAWSUITE AGAINST HIM FOR SEXUAL HARRASMENT AND HE'S OUT TO GET ME THEM FOR ANYTHING.... I DON'T FEEL COMFORTABLE ROUND HIM ANYMORE. IF HE OFFICER BENNETT WASN'T DOING HOMSEXUAL THINGS TO PEOPLE NOBODY WONT BE WRITING HIM UP ALL THE TIME. I AM READY TO GO TO PRISON AND DO MY TIME THERE. THIS WAS AROUND 11:15 AM SUNDAY. THIS THE 3RD GRIEVANCES FROM I HAD TO PUT ON HIM SINCEI HAVE BEEN IN THIS JAIL A YEAR A GO.... I WOULD LIKE FOR THIS TO BE READ BY MRS. RAMI CAN OFFICER SHERIFF JEFF BLACK. AND I WOULD LIKE A COPY OF THE GRIEVANCE PLEASE.... ITS SOMETHING HAVE TO AND NEED TO BE DONE ABOUT OFFICER BENNETT BEHAVIORS. THANS FOR YOUR CONCERN...

(ECF No. 29-3, p. 3) (errors and emphasis in original). Administrator Cox responded on December 9, 2024 stating: "I will investigate this." *Id.* at 4.

On December 12, 2024, Plaintiff filed a Request Form asking for an update on the investigation into Defendant from his December 8, 2024 Grievance. Administrator Cox responded: "The matter was taken care of." (ECF No. 29-3, p. 5).

On December 26, 2024, Plaintiff filed another Grievance regarding Defendant stating:

MRS. RAMI, I HAVE BEEN COMING TO YOU ABOUT BENNETTE BEHAVIOR WITH ME IN THE LAST 3-6 MONTHS NOW AND TO ME IT SEEMS LIKE THERE IS NOTHING BEEN DOING ABOUT IT. ON THE DAY AFTER CHRISTMAS 2024. OFFICER BENNETTE CAME INTO A POD TO DO POD CHECK. I MYSELF, WAS IN THE SHOWER WHEN OFFICER BENNETTE CAME IN THE POD AND SAW ME AND PAUSED AND STARED AT ME WHERE I WAS COMPLETELY EXPOSED, HE STARED AT ME IN A JOKING MANNER FOR SEVERAL SECONDS AND SAID I DIDN'T HAVE ENOUGH SOAP ON MY BODY. I ASKED HIM WHY IS HE LOOKING AT ME WHILE I AM IN THE SHOWER. HE JUST LAUGHED AT ME AND WALKED OFF LOOKING AT ME. I FEEL VERY DISRESPECTED AND EMBARRASED BECAUSE OTHER INMATES WITNESSED IT. THEY WERE TIMOTHY SIVILS, KENDALL WILLIS, AND RANDY GUINN. IVE

> BEEN PATIENT AND WENT THROUGH THE PROPER CHANNELS BUT I FEEL NOTHING IS BEING DONE.  IF PREA WORKED I WOULD USE THAT BUT WE CANT PLEASE TAKE MY GRIEVANCE SERIOUSLY, AND I AWAIT YOUR RESPONSE.  I WOULD LIKE THE SHERIFF TO KNOW ABOUT THIS MATTER ASAP!!!  THIS IS GETTING OUT OF HAND AND I FEELS LIKE HE CANT BE TOUCHED OR STOPPED BECAUSE ITS STILL HAPPEN.  I AM TRYING TO CONTROL MY ANXIETY . . . .

(ECF No. 29-3, p. 6) (errors and emphasis in original).  Administrator Cox responded stating: "I will check the cameras on that day to see what happened.").  *Id.*

On January 6, 2025, Plaintiff filed another Request Form asking Administrator Cox if she ever watched the video of the December 26, 2024 incident in the shower and stating that Defendant was still making sexual comments to people while they were showering.  (ECF No. 29-3, p. 8).

The parties do not dispute that Plaintiff filed these above Grievances and Request Forms and that Administrator Cox responded as stated.  (ECF Nos. 29, 35).

In his deposition, Plaintiff testified, Defendant was trying to provoke him with the shower comments.  (ECF No. 29-4, p. 16).  Also, Plaintiff testified that Defendant told him once, when Plaintiff complained his tray was too salty, that: "If you wouldn't have put this lawsuit on me, you wouldn't be getting treated like this."  Plaintiff went on to testify that Defendant also told him: "You'll get what's coming to you."  *Id.* at 18-19.

Regarding the harm Plaintiff suffered, he testified in his deposition that Defendant ruined his reputation by causing people to believe he was a homosexual.  (ECF No. 29-4, p. 52-53).[3]

---

[3] Plaintiff also testified to several physical injuries he received when another inmate attacked him. Plaintiff claims in his deposition that Defendant orchestrated this attack.  (ECF No. 29-4, pp. 14, 48).  However, Plaintiff did not raise any claims or factual allegations in his Amended Complaint related to Defendant orchestrating a physical attack on Plaintiff by other inmates.  As explained above, the Court will not address such a claim raised now for the first time on summary judgment. *See N. State Power Co*, 358 F.3d at 1057.

Regarding Plaintiff's official capacity claim, he testified in his deposition that he did not believe Lafayette County had a policy, practice, or custom to retaliate against him. Instead, he believed Lafayette County had a policy not to violate his First Amendment rights, but that Defendant went against that policy. (ECF No. 29-4, pp. 50-51).

Defendant testified in his Affidavit:

> On or about February 29, 2024, another jailer and I observed Plaintiff and Inmate Brown on the video system, appearing to be engaging in sexual activity. Upon further investigation and entering the housing pod, I observed that Plaintiff and Inmate Brown were engaging in sexual activity. I was then tasked with separating and removing Plaintiff and Inmate Brown from the same pod. I removed Inmate Brown from the pod that Plaintiff was housed in.
>
> LCDC has a zero tolerance policy for sexual activity. Inmates engaging in sexual activity is a safety and security risk to the detention center. Inmates that are found engaging in sexual activity are separated as soon as possible.
>
> I did not inform other inmates that Plaintiff engaged in sexual activity with Inmate Brown. To the best of my knowledge, other inmates spread information regarding Plaintiff and Inmate Brown.
>
> It was my understanding that Inmate Ramon Anderson tried to begin a physical altercation with Plaintiff. I received information indicating that the altercation may have been due to Inmate Brown. Plaintiff was moved to A-pod for his safety on or about April 18, 2024.
>
> I do not recall making any comments to Plaintiff while he was in the shower.
>
> I did not threaten Plaintiff, deprive him of any privileges, or otherwise change his conditions during his incarceration within LCDC. Plaintiff was not charged with a disciplinary action related to the incident of sexual activity.
> . . .
> I did not retaliate against Plaintiff for filing a lawsuit.

(ECF No. 29-5). Plaintiff does not dispute the fact he did not receive any disciplinary action regarding the alleged sexual acts with Inmate Brown. Instead, Plaintiff points to the absence of disciplinary action as support for his contention the sex act was fabricated by Defendant for retaliatory purposes. (ECF No. 35, p. 3).

9

### III.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."  *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor."  *Nat'l Bank*, 165 F.3d at 607.  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment."  *Id*. at 610.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### IV.  DISCUSSION

First, the only claims before the Court are those Plaintiff alleged in his Amended Complaint.  As previously explained, Plaintiff may not assert new claims for the first time in his Response to Defendant's Motion for Summary Judgment.  This also stands true for Plaintiff's attempts to allege new or different instances of retaliation in his Response, e.g. Plaintiff did not

10

allege any retaliation claim based on housing location or physical attacks by other inmates in his Amended Complaint.  Such new allegations will not be addressed by the Court herein.

Plaintiff states two claims in his Amended Complaint that Defendant moves to dismiss on summary judgment: (1) that Defendant "failed to protect" his "sexual rights" by disclosing his sexual life; and (2) that Defendant retaliated against him for filing a Section 1983 civil rights lawsuit by scandalizing his reputation with accusations of homosexual conduct with a fellow inmate.  Defendant first argues Plaintiff has failed to state any claim against him, and alternatively, if the Court finds Plaintiff has alleged cognizable constitutional violations, Defendant is entitled to qualified immunity.  The Court need not reach the issue of qualified immunity because, as explained below, both of Plaintiff's claims fail as a matter of law.

### A.  Sexual Harassment

Plaintiff uses the term failure to protect his sexual rights in his Amended Complaint and sexual harassment in his Response.  The Court cannot interpret any version of Plaintiff's claims to state a failure to protect claim against Defendant in this case.  Accordingly, the Court construes Plaintiff's first claim as one for sexual harassment against Defendant.

While "sexual harassment or abuse of an inmate by a corrections officer . . . can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment,  . . . sexual harassment, absent contact or touching, does not constitute unnecessary and wanton infliction of pain."  *Howard v. Everett*, 208 F.3d 218, 20000 WL 268493, at *1 (8th Cir. Mar. 10, 2000) (table opinion) (quoting *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997)).

Considering all facts on the summary judgment record in the light most favorable to Plaintiff, Defendant's actions were merely verbal—comments while Plaintiff showered and

11

comments to Plaintiff regarding Inmate Brown.  While the Court finds such behavior and commentary, if true, inappropriate and unprofessional, it does not rise to the level of a constitutional violation.  *See Howard,* 208 F.3d 218, 2000 WL 268493, at *1 (holding sexual comments and gestures, while reprehensible, did not rise to the level of a constitutional violation without contact or touching).  See also *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (explaining verbal threats and name calling, without more, are not usually actionable under Section 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse do not rise to the level of a constitutional violation).

Accordingly, the Court finds Plaintiff's claim of sexual harassment should be dismissed.

### B.  Retaliation

Even though Plaintiff's sexual harassment claim fails as a matter of law, Defendant's actions may still give rise to a retaliation claim if Plaintiff can show all elements necessary for such a claim.  In general, conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct itself is not a constitutional violation.  *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citation omitted); *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990) (citations omitted).

Plaintiff claims in his Amended Complaint, that Defendant retaliated against him for filing a Section 1983 lawsuit by "going around the jail telling inmates he caught myself and another inmate on video doing sexual act" and by "scandalizing" Plaintiff's name.  (ECF No. 8, p. 4).  "To prevail on a § 1983 claim for retaliation in violation of the First Amendment, [Plaintiff] must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the

protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

First, it is undisputed that Plaintiff engaged in a protected activity by filing his first Section 1983 civil rights lawsuit against Defendant. *See Harris v. Burns, et al.,* Civil Case No. 4:24-cv-04060-SOH; *see also* (ECF No. 28, p. 5).

Next, it is disputed whether Defendant took adverse action against Plaintiff through spreading rumors regarding Plaintiff and Inmate Brown's alleged sexual interaction. Defendant testifies while he did observe Plaintiff engaging in sexual interactions with Inmate Brown, he did not tell any other inmates of this observation. (ECF No. 29-5, p. 1). To the contrary, Plaintiff testified Defendant told four separate inmates that Plaintiff was caught on LCDC video cameras in sexual acts with Inmate Brown. (ECF No. 29-4, p. 37). To further confuse the issue, Plaintiff also testifies that another inmate, Raymond Anderson, is the one that started the rumor regarding Plaintiff and Inmate Brown inside the LCDC and in the "streets." (ECF No. 29-4, pp. 22-23, 29). Accordingly, the Court finds there are issues of fact as to whether Defendant took the alleged adverse actions against Plaintiff.

However, the analysis does not end there. Even considering the facts in the light most favorable to Plaintiff—as the Court must on summary judgment—there still must be evidence the adverse action (spreading of rumor regarding Inmate Brown), by Defendant, was of the type that would chill a person of ordinary firmness from continuing in the protected activity. *Santiago*, 707 F.3d at 991. "The ordinary-firmness test is designed to weed out trivial matters from substantial violations of the First Amendment." *Gonzalez v. Bendt,* 971 F.3d 742, 745 (8th Cir. 2020) (citing *Santiago,* 707 F.3d at 992). "Summary judgment is appropriate if there is insufficient evidence the adverse action would deter a person of ordinary firmness from continuing to engage in [the]

13

First Amendment protected activity." *Id.* (citing *Garcia v. City of Trenton,* 348 F.3d 726, 729 (8th Cir. 2003)). The Court will consider Plaintiff's actions in response to Defendant's alleged retaliation as evidence as to what a person of ordinary firmness would have done. *Naucke v. City of Park Hills,* 284 F.3d. 923, 928 (8th Cir. 2002).

Defendant argues in his Motion that Plaintiff has failed to show the alleged actions were sufficiently adverse or serious to deter a person of ordinary firmness from continuing in the protected activity—filing Section 1983 lawsuits. Specifically, Defendant argues, Plaintiff was not deterred as he filed two additional Section 1983 lawsuits after the alleged retaliation. Further, Defendant argues the alleged actions are not sufficiently adverse to implicate the First Amendment. (ECF No. 28, pp. 5-6). The Court agrees.

The Court recognizes that Plaintiff was not in fact deterred from exercising his First Amendment rights. Plaintiff claims the retaliation by Defendant occurred or began on November 6, 2024. (ECF No. 8, p. 4). Plaintiff filed the instant action on February 14, 2025, and after the Court severed this case into two separate cases on February 25, 2024, Plaintiff continued to prosecute both cases. *See Harris v. Bennett,* Civil Case No. 4:25-cv-04012; *Harris v. Cox,* Civil Case No. 4:25-cv-04015-SOH-SGS. Accordingly, the Court finds this is evidence that a person of ordinary firmness would not be deterred by Defendant's actions. *See Naucke,* 284 F.3d 928.

Further, the actions complained of by Plaintiff here are atypical to those usually complained of as adverse actions showing retaliation. *See Spencer v. Jackson Ctny., Mo.* 738 F.3d 907, 911 (8th Cir. 2013) ("[a]dverse actions which may show retaliation include denial of privileges or acts worsening an inmate's working conditions."). The Eighth Circuit has also previously explained, in the retaliation context, offensive, unprofessional, and inappropriate comments are not sufficiently serious to establish adverse actions which would deter a person of

14

ordinary firmness from exercising their First Amendment rights. *Id*. In *Naucke,* the plaintiff, Mrs. Naucke, brought a retaliation claim against a city council for: causing damage to her reputation; personal humiliation; disgrace; and mental anguish and suffering. Mrs. Naucke publicly spoke against the city's policies. After exercising that protected First Amendment right, the city administrator made derogatory comments to Mrs. Naucke in public places, posted pictures of her home in the local grocery store with embarrassing remarks stamped on it; and circulated a letter alleging one of Mrs. Naucke's children was illegitimate. *Id.* at 926. Mrs. Naucke claimed these actions, by the city administrator, caused damage to her reputation, personal humiliation, disgrace, and mental anguish and suffering. *Id.*

The Court finds Mrs. Naucke's alleged injuries and the alleged adverse actions analogous to Plaintiff's here. Both complained of an attack on their reputation, embarrassment, and emotional distress without any physical or monetary damage. Also, just as Plaintiff here, the alleged adverse action did not deter Mrs. Naucke from continuing to exercise her First Amendment rights. Mrs. Naucke continued to speak out against the policies of her city council just as Plaintiff continued to exercise his rights to file Section 1983 lawsuits. *Id.* at 928.

Accordingly, as in *Naucke,* the Court finds the alleged actions of Defendant (spreading rumors regarding Plaintiff's sexual conduct) and the embarrassment, humiliation, and emotional distress alleged by Plaintiff here, are insufficient to deter a person of ordinary firmness from exercising protected activity such as filing Section 1983 lawsuits that implicate the First Amendment. *Id.* Accordingly, the Court finds Plaintiff's claim of retaliation should be dismissed.

Plaintiff did not produce any summary judgment evidence in his Response to alter this analysis. While he argues Defendant's actions were of the kind that would deter a person of ordinary firmness, he does not allege any facts or produce any evidence to support this argument.

15

(ECF No. 35, p. 7).  This is insufficient to survive summary judgment.  *Nat'l Bank*, 165 F.3d at 607.  Plaintiff also makes many arguments regarding the issues of fact surrounding whether Defendant made sexual comments or spread rumors about him, but these disputes of fact are irrelevant to the dispositive legal issues herein.  Even taking all factual allegations made by Plaintiff regarding Defendant's sexual commentary and rumor spreading as true, Plaintiff's claims still fail as a matter of law.

The Court need not reach the issue of whether Plaintiff adequately established the final element of causation, as his retaliation claim fails at the second element.

### C.  Official Capacity

Since Plaintiff has failed to state an individual claim against Defendant regarding either of his claims, he cannot maintain an official capacity claim against Defendant or the Defendant's employer Lafayette County.  *See Morris v. Cradduck,* 954 F.3d 1055, 1060 (8th Cir. 2020) *Sanders v. City of Minneapolis, Minn.,* 474 F.3d 523, 527 (8th Cir. 2007) (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986)).  Furthermore, "[c]laims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself."  *Id.*  Plaintiff did not cite or claim any policies or procedures of Lafayette County that violated his constitutional rights.  On the contrary, Plaintiff testified in his deposition that he did not believe Lafayette County had a policy causing Defendant's actions and if anything, Defendant violated Lafayette County policy with his actions.

As Plaintiff has failed to allege any unconstitutional policy, procedure, or custom of Lafayette County, his official capacity claim should be dismissed.

16

## V.  CONCLUSION

For the reasons stated above, I recommend Defendant's Motion for Summary Judgment (ECF No. 27) be **GRANTED** and Plaintiff's claims be **DISMISSED WITH PREJUDICE.**

**Referral Status: The referral in this matter should be terminated.**

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 24th day of June 2026.**

/s/ *Spencer G. Singleton*
HON. SPENCER G. SINGLETON
UNITED STATES MAGISTRATE JUDGE

17